UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DARION Y. TURNER,

        Petitioner,

v.                                CASE NO. 05-CV-70723-DT
                                 HONORABLE JOHN CORBETT O'MEARA

KENNETH ROMANOWSKI,

        Respondent.

_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION,
DENYING PETITIONER'S MOTIONS FOR RECONSIDERATION,
FOR AN EVIDENTIARY HEARING, AND FOR BAIL,
AND GRANTING PETITIONER'S REQUEST FOR AN
ADJUDICATION ON THE MERITS OF HIS CLAIMS**

      This matter is pending before the Court on petitioner Darion Y. Turner's application for

the writ of habeas corpus under 28 U.S.C. § 2254.  Also pending before the Court are

Petitioner's motions for:  (1) reconsideration of the Court's order denying his motions for

appointment of counsel and funds to retain investigative services; (2) an evidentiary hearing; (3)

a special hearing on the merits; and (4) release on bail.

      The Court has determined that substantive review of Petitioner's claims is the most

efficient approach to this case.  However, the Court finds no merit in Petitioner's claims and no

need to conduct an evidentiary hearing, to reconsider prior orders in this case, or to release

Petitioner on bail.  Consequently, the  habeas petition and pending motions for reconsideration,

for an evidentiary hearing, and for bail are denied.  Petitioner's Motion for a Special Hearing is

granted to the extent that the Court will review the merits of Petitioner's claims.  A procedural

history and discussion follow.

## I. Background

### A. The Trial

Petitioner was charged in Wayne County, Michigan with two counts of premeditated murder, two alternative counts of felony murder, one count of arson, and one count of possession of a firearm during the commission of, or attempt to commit, a felony (felony firearm). The charges arose from a house fire at 6305 Linwood Street in Detroit on June 18, 1992. Tyrone Pickens and Yolanda Gray were occupants of the house and died as a result of smoke inhalation.[1]

Petitioner was tried jointly with Mark Smith and his uncle, Dyrone Turner. Nina Pearson testified that she lived at 6305 Linwood with her mother, her sister Rene, and her cousin Jerome Young. A few days before the fire, Petitioner and Mark Smith approached her while she was sitting on the porch. Petitioner informed her that she could not live there anymore and had to leave if he could not sell dope from the house. Mark Smith stated that the landlord, Willie Darden, had employed them to remove the occupants of the house no matter how he had to do it. Petitioner, Smith, and a third man then pulled out guns and started shooting.

Jerome Young sold narcotics out of the house on Linwood. He testified about the same shooting incident. He claimed that Petitioner had said this was his neighborhood and that he usually did not permit anyone to sell dope in the neighborhood.

On the following Thursday, June 18, 1992, Jerome Young saw Dyrone Turner showing off a gun. About 10:00 or 10:30 p.m. that same day, Jerome heard a horn and ran to the front door, thinking that he might have a customer. He saw three men whom he did not recognize in a black and light-colored car. A passenger in the car threw something in the doorway. It looked

_____

[1] Yolanda is also referred to as Rene in the transcript of trial.

like a bottle with a rag and a burning substance in it. He smelled gasoline. Within a few minutes, a fire started at the front of the house, and he heard shooting at the back of the house. He peeked out a back window on the second story of the house and saw Petitioner, Mark Smith, Dyrone Turner, and a fourth man firing guns at the back of the house. They were wearing hooded sweatshirts. He could see well although he had only one eye, wore glasses, and had smoked cocaine about a half hour before the fire.

Ronald Arnold testified that he lived on Ferry Park Street near Linwood Street and that he heard shooting on June 16, 1992. He knew all three defendants and, about five to ten minutes after the shooting, he saw Petitioner carrying a pistol. Later that day, he overheard Petitioner say that he was involved in a shooting at Jerome's house because the people who lived there refused to move.

Two days later at about 7:00 p.m., Arnold saw the three defendants in the backyard of Petitioner's grandmother's house. They were standing in a group around a car. Beer bottles containing a gold-colored liquid, which Arnold suspected was gasoline, were resting on the ground and on the car. He heard Petitioner say that the people on Linwood had to move. Then Dyrone Turner said, "We could burn [them] out." Later that same evening, Arnold got a call from his sister and went to see the fire at the house on Linwood. On his way there, he heard gunshots. About ten minutes later, he saw Petitioner, Mark Smith, and two other men running from Linwood toward their grandmother's house. They wore dark-colored, hooded sweatshirts.

Eight or nine days later, he overheard Petitioner say that he and Dyrone had burned the house because the people would not move. In his statement to the police Arnold also said that he had overheard Petitioner say he made the bombs.

After Arnold was arrested on drug charges in August of 1992, he informed the police what he knew about the fire on Linwood.  In return for his testimony at Petitioner's trial, the drug charge against Arnold was reduced.  He pleaded guilty and received a sentence of lifetime probation.

Bobby Smith testified that someone threw firebombs in the downstairs and upstairs of the house on Linwood about midnight on June 18, 1992.  He did not see who threw the firebombs, and he did not see anyone shooting, although he heard gunshots at the back of the house after the fire started.

Willie Darden owned the building at 6305 Linwood.  He claimed that the residents owed him rent, but he denied telling Mark Smith to do whatever was necessary to evict his tenants.  A forensic pathologist testified that the victims died of soot and smoke inhalation.

Petitioner did not testify or present any witnesses.  Co-defendant Mark  Smith presented one witness, who claimed that Smith was at her home on June 18, 1992, from 11:00 p.m. to 3:00 a.m.  Co-defendant Dyrone Turner presented one witness, Frederick Washington, who testified that he was at Ronald Arnold's house on June 18, 1992, somewhere between 10:30 p.m. and midnight.  After Arnold received a telephone call about a fire, Arnold, Washington, and Washington's cousin Everett went to see the fire at the corner of Linwood Street.  Washington did not see anyone running down the alley, and he did not hear any gunshots.  He went back to Arnold's home about twenty minutes later and he stayed there for ten to fifteen minutes longer, but he did not see Petitioner, Dyrone Turner, or Mark Smith there.

On June 14, 1993, the jury found Petitioner guilty of two counts of second-degree

murder, Mich. Comp. Laws § 750.317, and one count of felony firearm, Mich. Comp. Laws §

720.227b.  He was acquitted of the other charges.  Co-defendant Mark Smith also was convicted

of second-degree murder and felony firearm, but co-defendant Dyrone Turner was acquitted of

all charges.  The trial court sentenced Petitioner to two years in prison for the felony firearm

conviction, followed by concurrent terms of eighteen to forty years for the two murder

convictions.

### B.  Direct Appeal

Petitioner's appellate attorney argued on direct review that (1) the trial court erred in

admitting evidence of the shooting on June 16, 1992, and (2) the prosecutor failed to elicit all the

details of the plea agreement with Ronald Arnold.  The Michigan Court of Appeals rejected

these claims and affirmed Petitioner's convictions in an unpublished *per curiam* opinion.  *See

People v. Turner*, No. 168024 (Mich. Ct. App. Dec. 21, 1994).  On November 21, 1995, the

Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions

presented should be reviewed.  *See People v. Turner*, 450 Mich. 920; 543 N.W.2d 313 (1995)

(table).

### C.  State Collateral Review

On or about October 7, 2002, Petitioner filed a motion for relief from judgment in which

he alleged (1) prosecutorial misconduct, (2) ineffective assistance of trial and appellate counsel,

(3) newly discovered evidence of actual innocence, (4) defective jury instructions, and (5) denial

of due process by the cumulative effect of errors.  The trial court found no merit in these claims

and denied Petitioner's motion.  The Michigan Court of Appeals denied leave to appeal the trial

court's decision for failure to meet the burden of establishing entitlement to relief under

Michigan Court Rule 6.508(D).  *See People v. Turner*, No. 252830 (Mich. Ct. App. Mar. 15, 2004).  On December 29, 2004, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Turner*, 471 Mich. 944; 690 N.W.2d 117 (2004) (table).

## D.  Federal Court Proceedings

Petitioner filed his habeas corpus petition on February 24, 2005.  The petition sets forth the following claims and issues:

I.      The trial and appeals court denial of Petitioner's request for an evidentiary hearing pursuant to the Michigan Supreme Court's decision in *People v. Ginther*, after appellant's *prima facie* showing that his claims of ineffective assistance of trial and appellate counsels were supported by evidence outside of the record, is a capricious and arbitrary denial that violated the Equal Protection Clause to the Fourteenth Amendment to the United States Constitution and the Michigan Constitution.

II.     Petitioner is actually innocent of the crimes he was accused and convicted of, whereby the Michigan Court of Appeals should have waived the good cause requirements of MCR 6.508(D)(3)(a).

III.    Whether or not Petitioner was deprived of his liberty and fair trial where the prosecutor misrepresented the facts in the case, vouched for the credibility of her witnesses and perpetrated a fraud upon the court and jury when she

A.     used false and perjured testimony;

B.     introduced irrelevant evidence of a red container; and

C.     placed before the jury guns and ammunition not used in the crime against the accused requiring reversal under the Fourteenth Amendment.

IV.     Whether or not Petitioner was deprived of his appeal of right where he was the victim of ineffective assistance of counsel on direct appeal in violation of Petitioner's Sixth and Fourteenth Amendment rights to the Constitution and whether or not the appeal of right should be reinstated.

V.      Petitioner was deprived of effective assistance of trial counsel in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to the United States Constitution.

VI.     Whether or not Petitioner is entitled to relief from judgment where he has met his burden of establishing entitlement to relief on cause and prejudice.

VII.    Whether or not the cumulative effect of all errors combined denied fundamental due process of law and a fair trial that reversal of the conviction is the only remedy to cure the travesty of justice in this case.

VIII.   Whether or not the jury instructions as given denied fundamental due process of law and created a substantial and injurious effect on the jury's verdict as a whole, which renders the errors a structural error defect in the entire trial mechanism that reversal is mandated.

IX.     Petitioner contends that his case should be remanded and a new trial should be granted based on newly discovered evidence which supports Petitioner's claim of actual innocence.

X.      The trial court erred in admitting evidence of a prior bad act where the offense was not blended with the crime of which the defendant was accused and where the prejudicial value of evidence of the act far outweighed its probative value.

XI.     The prosecutor engaged in misconduct where she withheld evidence that a prosecution witness entered into a plea bargain whereby that witness agreed to testify against the defendant.

Respondent argued in a motion to dismiss the habeas petition that Petitioner's claims were barred by the one-year statute of limitations found in 28 U.S.C. § 2244(d).  Petitioner argued in favor of equitable tolling of the statute of limitations on the ground that he had new evidence of actual innocence.  On March 22, 2006, the Court dismissed Respondent's motion without prejudice and stayed this action pending the Supreme Court's decision in *House v. Bell*, No. 04-8990, *petition for cert. granted*, 545 U.S. 1151 (2005).  The Court re-opened the case

after the Supreme Court issued its decision in *House v. Bell*, __ U.S. __, 126 S. Ct. 2064 (2006).

The Court has decided to adjudicate Petitioner's claims on their merits regardless of whether they are barred from review by the statute of limitations or the doctrines of exhaustion and procedural default. None of those doctrines are jurisdictional bars to substantive review of Petitioner's claims. *See White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (stating that the exhaustion requirement is not a jurisdictional one), *cert. denied sub nom Houk v. White,* __ U.S. __, 127 S. Ct. 578 (2006), *and cert. denied sub nom White v. Houk*, __ U.S. __, 127 S. Ct. 581 (2006); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (noting that procedural default is not a jurisdictional bar to review on the merits), *cert. denied*, 546 U.S. 1100 (2006); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (indicating that the statute of limitations is not jurisdictional).

## II. Standard of Review

Habeas petitioners are not entitled to the writ of habeas corpus unless they can show that the state court's adjudication of their claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's

majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Id*. at 410 (emphasis in original).  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id*. at 409.  Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).  "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1)."  *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

## III. Discussion

### A.  Actual Innocence

Petitioner's second, sixth, and ninth claims assert that Petitioner is actually innocent of the crimes for which he was convicted.  The Supreme Court stated long ago in *Townsend v. Sain*, 372 U.S. 293, 317 (1963), that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying

state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact." *Id.* "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

Even if a right to assert a freestanding claim of innocence exists, the threshold for any hypothetical freestanding innocence claim is "extraordinarily high." *House,* 126 S. Ct. at 2087 (quoting *Herrera*, 506 U.S. at 417). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner must show that, in light of new evidence, no reasonable juror would have found him guilty beyond a reasonable doubt. *Id.* at 327.

Petitioner has submitted a number of affidavits from people who claim that Petitioner was not involved in the fire and shooting at 6305 Linwood Street on June 18, 1992. In the new trial context, allegations "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera*, 507 U.S. at 417. "Recanting affidavits and witnesses are viewed with extreme suspicion." *United States v. Chambers,* 944 F.2d 1253, 1264 (6th Cir. 1991), *superseded in part on other grounds by* U.S.S.G. § 2D1.5(a).

Furthermore, the affidavits supporting the habeas petition are not credible or convincing. Petitioner alleges that, if he had testified, he would have said he was with Brenda Matthews at Anthony ("Tone") Shumate's house on the night of the crime. A reasonable juror could discount

Petitioner's own testimony in support of his own cause. *McCray v. Vasbinder*, ___ F.3d ___, ___, No. 06-2381, 2007 WL 2416426, at *5 (6th Cir. Aug. 28, 2007).

Petitioner claims that Ms. Matthews also would have testified that he was with her between 11:00 p.m. and midnight on June 18, 1992. This information apparently is not new evidence, because Matthews was listed as an alibi witness. Petitioner and his attorney waived Ms. Matthews as a witness on the basis that they had decided to take a different approach, not because she was unavailable. (Tr. June 7, 1993, at 46-47.) Even if Matthews had been called as a witness, her testimony would not have ruled out the possibility that Petitioner committed the crime, because one witness testified that the fire occurred about 10:00 p.m. or 10:30 p.m.

Keith Campbell's affidavit states that Dyrone Turner told him that he (Dyrone) felt badly because Petitioner was convicted of a crime he did not commit. According to Campbell, Dyrone said that he (Dyrone) and Tone Shumate shot up the house and threw a firebomb inside the back window and that Petitioner was not involved in the incident. Dyrone, however, was acquitted of all charges in the case and has not admitted guilt in a signed affidavit.

Mark Smith was convicted of the same charges as Petitioner, and he has admitted his guilt in an affidavit. His affidavit is consistent with Keith Campbell's affidavit in that it says he (Smith), Dyrone Turner, and Tone Shumate were responsible for the crimes and that Petitioner is innocent. Smith's admission of guilt is inconsistent with his defense at trial that he was playing cards with his girlfriend and his girlfriend's grandmother at the time of the crime. A reasonable juror would find Smith's affidavit unreliable because it indicates that he is lying now or presented a false defense at trial.

Michael Arnold has alleged in an affidavit that he heard gunfire in the neighborhood

between 10:00 p.m. and 11:00 p.m., or possibly a little later, on a June day in 1992 and that he subsequently learned the house at 6305 Linwood was on fire. He claims that he telephoned Tone Shumate's house after he obtained the information and that Petitioner answered the telephone. Michael concludes that Petitioner could not have been involved in the crime, because he could not have been two places at the same time.

Petitioner admits in his habeas petition that his attorney did not feel comfortable using Mike Arnold as an alibi witness. Mike apparently had been charged with a crime in an unrelated case. His circumstantial evidence, which is vague as to the date and time of his telephone call to Tone Shumate's house, does nothing to rebut Jerome Young's eyewitness testimony that Petitioner was shooting at the house about 10:00 p.m. or 10:30 p.m. after firebombs were thrown into the house.

D'Andre Turner's affidavit also alleges that Petitioner was at "Tone's" house on the night of the fire. This affidavit is suspect because D'Andre is Petitioner's uncle and has a personal stake in exonerating Petitioner. *McCray*, 2007 WL 2416426, at *6. Moreover, the affidavit was written almost twelve years after Petitioner's conviction. Although D'Andre states that he could not come forth sooner due to his drug addiction, the implication is that his mind was clouded by drugs at the time of the offense.

Lathair Baldwin states in an affidavit that Ronald Arnold admitted to him that Arnold lied at Petitioner's trial in order to get a favorable deal in his own criminal case and to avoid prison. According to Baldwin, Arnold said that he had no idea who committed the crime. Arnold, however, has not recanted his testimony in an affidavit, and even if he has recanted his testimony to Baldwin, recanting witnesses are viewed with extreme suspicion. *See id*.

Petitioner has provided no scientific evidence linking anyone else to the crime, no signed confessions by Tone Shumate or Dyrone Tyrone that they were the arsonists and shooters, and no evidence casting sufficient doubt on Jerome Young's testimony that he saw Petitioner shooting at the house after firebombs were thrown into it. A reasonable juror would have found Petitioner guilty even in light of the new evidence. Therefore, Petitioner has not demonstrated a credible claim of innocence. "[W]hatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *House*, 126 S. Ct. at 2087.

### B. The Prosecutor's Conduct

The third and eleventh claims allege prosecutorial misconduct. Petitioner contends that the prosecutor used false testimony, introduced irrelevant evidence, committed a fraud upon the trial court, vouched for the credibility of her witnesses, and withheld evidence of Ronald Arnold's plea bargain.

To prevail on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be so egregious as to render the entire trial fundamentally unfair. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

First, the Court must ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 516 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 2977

(2007). If they were improper, the Court must consider the following four factors to determine whether the improper acts were sufficiently flagrant as to warrant reversal:

> (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.

*Id*.

### 1. False Testimony; Fraud on the Court

Petitioner alleges that the prosecutor committed a fraud on the trial court and relied on the perjured testimony of Jerome Young and Bobby Smith. The testimony of Young and Smith established that Petitioner was shooting a gun in the backyard of the house on Linwood Street when someone threw firebombs in the front door and through an upstairs window. Petitioner claims that there were no bullet holes in the house and that the fire started in the dining room, not the front door.

> The elements of fraud on the court include conduct: 1) on the part of an officer of the court; 2) that is directed at the judicial machinery itself; 3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; and 5) that deceives the court. *See Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir. 1993).

*Workman v. Bell*, 484 F.3d 837, 840 n.1 (6th Cir. 2007). And "[t]o prevail on a claim that the government presented perjured testimony, [a defendant] must show '(1) that the statements were actually false; (2) the statements made were material; and (3) [the] prosecution knew they were false.'" *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995) (quoting *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993)).

Petitioner correctly notes that Jerome Young testified that the fire started at the front door

14

(Tr. May 27, 1993, at 63), whereas the investigator opined that the fire originated in the dining room, not the front door (Tr. June 2, 1993, at 132, 141, 147). This discrepancy in the evidence could have been due to mistake, confusion, forgetfulness, or carelessness. Mere discrepancies in testimony fall short of establishing that the government knowingly used perjured testimony. *United States v. Griffin*, 194 F.3d 808, 819 (7th Cir. 1999). A simple discrepancy in the facts or inaccuracy in testimony also fails to establish a fraud on the court. *See Ohio Casualty Ins. Co. v. Pulliam*, 161 Fed. Appx. 494, 498 (6th Cir. 2005) (unpublished), *cert. denied*, __ U.S. __, 127 S. Ct. 182 (2006). Therefore, Petitioner's perjury and fraud-on-the-court claims lack merit.

### 2. Introduction of Evidence

Petitioner alleges that the prosecutor improperly introduced guns, ammunition, and a 3-1/2 gallon container, which the police found at a location other than the arson site. Petitioner maintains that the evidence was irrelevant because the items were not used in the arson incident.

The guns and ammunition were not admitted in evidence and were removed from the courtroom after the defense attorneys objected. In addition, the witness who was testifying about the items and the trial court explained to the jury that the items were not related to this case. (Tr. June 3, 1993, at 155-61.) As for the container, there was conflicting testimony as to whether it had been used for gasoline. One investigator testified that it smelled like gasoline (Tr. June 3, 1993, at 129, 175-76), but another investigator testified that the container smelled of kerosene (Tr. June 7, 1993, at 23). None of the disputed items were particularly prejudicial to the defense. Therefore, the alleged prosecutorial misconduct was not flagrant, even if it was improper.

### 3. Vouching

Petitioner contends that the prosecutor vouched for prosecution witnesses.

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness. *See, e.g., Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992). Generally, improper vouching involves either blunt comments, *see, e.g., United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir. 1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g.,* [*United States v.*]*Carroll,* 26 F.3d [1380, 1388 (6th Cir. 1994)] (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

Petitioner points to the portion of the record where the prosecutor was questioning Ronald Arnold about his plea agreement. The prosecutor established that the agreement required Arnold to tell the truth. (Tr. June 1, 69-70.) This dialogue with Arnold was not the same as expressing a personal belief in Arnold's testimony. Unlike the prosecutor in *Carroll*, the prosecutor at Petitioner's trial did not argue that Arnold would lose the benefit of his plea agreement if he lied.

On another occasion, the prosecutor actually stated that Arnold was not lying. This incident, however, occurred during defense counsel's cross-examination of Arnold. The defense attorney was arguing with Arnold about whether Arnold had been charged with a twenty-year felony or a four-year felony as Arnold claimed. The prosecutor interrupted the cross-examination and said that Arnold was not a liar. (Tr. May 27, 1999, at 199.) At worst, the prosecutor indicated that Arnold was being truthful about the offense and the maximum penalty for the offense with which he was charged.

Petitioner also cites to the prosecutor's closing arguments. However, the comments made during closing arguments consisted of a review of the evidence and reasonable inferences from the testimony. (Tr. June 8, 1993, at 27-35; 118-19.) The prosecutor was entitled to "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir.), *cert. denied*, __ U.S. __, 126 S. Ct. 163 (2005). Moreover, the trial court gave a special jury instruction in which it stated that the attorneys' arguments were not evidence and that no attorney was permitted to vouch for the credibility of a witness. The court charged the jurors to disregard any statements which appeared to vouch for the truth of a witness's testimony. The trial court also said that the only question for the jurors was whether the prosecutor had proved her case beyond a reasonable doubt. (Tr. June 9, 1993, at 29-31.)

This Court concludes that the prosecutor's comments were proper and, even if they were not proper, the prosecutor's conduct was not flagrant. Alternatively, the alleged prosecutorial misconduct could not have had a "substantial and injurious effect" on the jury's verdict and was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

### 4. Arnold's Plea Bargain

Petitioner's final allegation about the prosecutor is that the prosecutor withheld evidence that Ronald Arnold entered into a plea bargain and received several benefits for his testimony against Petitioner. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that Petitioner was not deprived of a fair and impartial trial.

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either

to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A true *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

During the direct examination of Ronald Arnold, the prosecutor elicited testimony that Arnold did not implicate Petitioner in the crime until Arnold himself was arrested for an unrelated crime. Arnold claimed at Petitioner's trial that he was not promised anything for his guilty plea, although he admitted that he received an intensive type of probation as a sentence. Arnold was questioned more fully about his deal with the prosecution on cross-examination by defense counsel.

Although the prosecutor did not elicit all the details brought out by defense counsel, she did disclose the criminal charge, which prompted Arnold to inculpate Petitioner in the arson case. Furthermore, it is obvious from the record that defense counsel knew about the deal between the prosecution and Arnold and that the deal was "not wholly within the control of the prosecution." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). "There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Id.* (quotations marks and end citations omitted). The Court concludes that Petitioner has not stated a true *Brady* claim.

18

### C. Prior "Bad Act"

Petitioner alleges that the trial court erred when it admitted evidence of the shooting at 6305 Linwood Street two days before the arson at the same location. Petitioner maintains that the prejudicial value of the evidence far outweighed its probative value. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that the trial court did not abuse its discretion in admitting the evidence.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)). Admission of evidence concerning the shooting incident was not fundamentally unfair because it established Petitioner's motive for the subsequent arson. Petitioner allegedly stated during the shooting incident that the occupants of 6305 Linwood Street had to leave unless he could sell drugs there.

Furthermore,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because there is no Supreme Court decision holding that the admission of "other acts" evidence violates the Constitution, the state court's conclusion that the evidence was admissible cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). *Id.* at 513.

### D. Trial Counsel

Petitioner alleges next that his trial attorney violated his constitutional right to effective assistance of counsel. The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Counsel's performance is deficient if it "fell below an objective standard of reasonableness." *Id*. at 688. A deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### 1. The Right to Testify

Petitioner alleges that he was denied his right to testify in his own defense by defense counsel's defective advice regarding the admissibility of a prior incident, which did not result in a conviction. The Court presumes that the prior incident was the shooting incident that occurred two days before the arson on Linwood Street.

Defendants in criminal cases possess a constitutional right to testify in their own defense. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). Relinquishment of the right must be knowing and intentional. *United States v. Joelson*, 7 F.3d 174, 177 (6th Cir. 1993). Defense counsel's role is to advise the defendant whether to testify, but the ultimate decision is for the defendant to make. *United States v. Hover*, 293 F.3d 930, 934 (6th Cir. 2002).

> [W]hen a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."

*United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (footnote and citations omitted).

Because Petitioner failed to alert the trial court that he wanted to testify or that he disagreed with his attorney's decision regarding his testifying, he is presumed to have waived his right to testify, and his claim fails. *United States v. Bass*, 460 F.3d 830, 839 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 2959 (2007).

Petitioner maintains that any waiver of the right to testify was not freely, knowingly, and intelligently made, because it was based on his attorney's defective advice. The trial court, however, ruled that the prosecutor could elicit testimony about the shooting incident on June 16, 1992, because it was related to the arson on June 18, 1992. (Tr. May 25, 1993, at 19-20.) Therefore, defense counsel's advice to Petitioner that he could be impeached about the shooting incident was not defective.

## 2. Alibi Witness

Petitioner claims that he notified his attorney of an alibi witness, but his attorney failed to investigate the witness and did not advise Petitioner of his right to call a second alibi witness. *Strickland* requires defense attorneys "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason

to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *Wiggins v. Smith*, 539 U.S. 510, 526 (2003); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

The first alibi witness was Mike Arnold, who supposedly would have testified that Petitioner was present at Tone Shumate's house miles from the crime scene when the arson occurred. Defense counsel apparently investigated this potential defense, because Petitioner alleges that his attorney was aware of a criminal case pending against Mike Arnold and even attended a court proceeding in Arnold's case. The result of the investigation was that the attorney did not feel comfortable using Arnold as an alibi witness. Pet. for Writ of Habeas Corpus at 54-55. These facts indicate that defense counsel made a reasonable investigation into Petitioner's alleged alibi defense and then made a strategic judgment not to pursue the defense.

The second alibi witness was Brenda Matthews. Petitioner alleges that Matthews would have testified that she and Petitioner were together from 11:00 p.m. until after midnight on the night of the arson. Defense counsel stated on the record that he had discussed this matter with Petitioner and that they were prepared to waive Matthews as a witness. Petitioner then personally waived his right to call Matthews. (Tr. June 7, 1993, at 46-47.)[2] Although Petitioner claims that he was not advised of his right to an alibi defense, he obviously knew that he had such a right, because he claims that he informed defense counsel about Mike Arnold's potential

---

[2] Ms. Matthews' surname is spelled "Mathis" in the record.

alibi testimony.

The Court concludes that defense counsel's performance was not deficient. Therefore, the state court's conclusion that Petitioner was not deprived of effective assistance of counsel was not an unreasonable application of *Strickland*.

### E.  Appellate Counsel

Petitioner contends that his appellate attorney was ineffective for not raising the pending claims on direct appeal. An appellate attorney need not raise every nonfrivolous argument on appeal if counsel decides as a matter of professional judgment not to raise those arguments. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Furthermore,

> it is difficult to demonstrate that an appellate attorney has violated the performance prong [of the *Strickland* test] where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 285, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.' *Id*. at 289.

*Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Exhibits to the habeas petition indicate that appellate counsel invited Petitioner to inform him of anything that should be mentioned in the appellate brief. The attorney even offered to help Petitioner with the preparation of a *pro se* supplemental brief if Petitioner chose to file one. Counsel's decision on which issues to raise on direct appeal clearly was a matter of professional

judgment.  *See* Pet. for Writ of Habeas Corpus, App. L - N.

Moreover, Petitioner obviously found some merit in the claims raised by appellate counsel, because he has included those issues in his habeas petition.  Petitioner's other claims are frivolous or not clearly stronger than the two issues raised by appellate counsel.  Therefore, the state court's rejection of Petitioner's claim did not amount to an unreasonable application of *Strickland*.

### F.  Failure to Hold an Evidentiary Hearing

Petitioner alleges that he had a right to an evidentiary hearing in state court on his allegations of ineffective assistance of counsel.  Petitioner relies on *People v. Ginther*, 390 Mich. 436 (1973), to support this claim.  The Michigan Supreme Court stated in *Ginther* that

> [a] defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing.

*Id*., 390 Mich. at 443-44; 212 N.W.2d at 925.  The Michigan Supreme Court did not hold that a criminal defendant has an absolute right to an evidentiary hearing in all cases where a defendant alleges ineffective assistance of counsel.

Furthermore, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)).  "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).

### G.  The Jury Instructions

Petitioner alleges next that the trial court's charge to the judge violated his constitutional right to due process and that the instructional errors mandate reversal because they were structural errors.  The question on habeas review of a jury instruction is not whether the instruction was "undesirable, erroneous, or even 'universally condemned.'"  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  Instead, before a federal court may overturn a state conviction, the instruction must have violated  "some right which was guaranteed to the defendant by the Fourteenth Amendment" or the ailing instruction by itself must have "so infected the entire trial that the resulting conviction violates due process."  *Id.* at 146-47.  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," *Dowling v. United States*, 493 U.S. 342, 352 (1990), and the fact that an  instruction may have been incorrect under state law is not a basis for habeas corpus relief.  *McGuire*, 502 U.S. at 71-72.

### 1.  The Cautionary Instruction

Petitioner alleges that the trial court erred when it gave a cautionary instruction about the June 16, 1992, shooting incident.  The instruction began as follows:

> I want to give you a special cautionary instruction as to a part of the evidence presented in the case.   Sometimes evidence in a trial is admitted for one purpose and may be used by the jury for one purpose, but can't legally be used for another purpose.  In this case you may well have, use your own memory of course[,] heard testimony that the Defendants Darion Turner and Mark Smith were engaged in a shooting incident on June 16, '92.  Now, members of the jury, these Defendants aren't on trial for any event that happened on June 16, '92.  They aren't on trial for any improper conduct or any criminal offense on that date.

(Tr. June 9, 1993, at 33.)  The trial court went on to say that, if the jurors were not convinced that the described events happened, there was nothing to consider, but, if they believed the events did occur, they could use the event only to help them determine whether Petitioner and Mark Smith

had a motive to commit the charged offense.  (*Id*. at 33-36.)  Contrary to what Petitioner says,

the special cautionary instruction did not permit the jurors to convict him on an unrelated charge.

### 2.  The Reasonable Doubt Instruction

Petitioner's allegation that the trial court failed to define the phrase "beyond a reasonable

doubt" is belied by the record.  The trial court defined "reasonable doubt" as

> a fair and honest doubt growing out of the evidence in the case or lack of
> evidence in the case.  It's not merely an imaginary or possible doubt, but a doubt
> that's based on reason and common sense.  A reasonable doubt is just that.  A
> doubt that is reasonable after a careful examination of the facts and circumstances
> of the case.

(Tr. June 9, 1993, at 7.)

Furthermore, the United States Court of Appeals for the Sixth Circuit has upheld the

constitutionality of this instruction and determined that the instruction does not lower the

government's burden of proof.  *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).

Petitioner's claim has no merit.

### 3.  The Instruction on Second Degree Murder

Petitioner alleges that the trial court erred in giving a jury instruction on second-degree

murder in a case where he was charged with arson.  This allegation overlooks the fact that

Petitioner also was charged with first-degree murder.  And, at the time of Petitioner's trial, courts

were required to instruct a jury on second-degree murder whenever the defendant was charged

with first-degree murder.  *People v. Jenkins*, 395 Mich. 440, 442; 236 N.W.2d 503, 504 (1975),

*overruled by People v. Cornell,* 466 Mich. 335; 646 N.W.2d 127 (2002).

Petitioner nevertheless maintains that the instruction on second-degree murder was defective because it omitted the element of causation and did not include language explaining that the victims died as a result of smoke inhalation. This allegation also has no basis in fact. The trial court specifically stated that, to establish second-degree murder, the prosecutor must prove to the jurors beyond a reasonable doubt that the defendants caused the death of the victim. (Tr. June 9, 1993, at 17-18.) The trial court was not required to say that the prosecutor had to prove that the victims died from smoke inhalation. The prosecutor only had to establish that Petitioner caused the victims' death. *See People v. Goecke,* 457 Mich. 442, 463-464; 579 N.W.2d 868, 878 (1998) (listing the elements of second degree-murder as "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse").

### 4. Constructive Amendment

Petitioner's final complaint about the jury instructions is that the instructions on first- and second-degree murder constructively amended the elements of the crime. Under federal law,

> [t]he Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury. The constitutional rights of an accused are violated when a modification at trial acts to broaden the charge contained in an indictment. A *variance* to the indictment occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. In contrast, an *amendment* involves a change, whether literal or in effect, in the terms of the indictment. This Circuit has held that a variance rises to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment . . . .

*Geboy v. Brigano*, 489 F.3d 752, 763 n.7 (6th Cir. 2007) (quoting *United States v. Chilingirian*,

280 F.3d 704, 711-12 (6th Cir. 2002)).  A variance will not constitute reversible error unless substantial rights of the defendant have been affected, but a constructive amendment does warrant reversal of a conviction.  *Id.*

Petitioner alleges that a constructive amendment occurred when the trial court stated that the jurors could find him guilty of first-degree murder if he caused a death by creating a fire and/or by preventing people from leaving the burning house.  Although the criminal complaint may not have charged Petitioner with causing death by preventing the occupants from leaving the premises, the complaint did charge Petitioner with first-degree murder, which requires a finding that the defendant premeditated and deliberated a killing or committed a killing during the perpetration of a felony.  Mich. Comp. Laws § 750.316(1)(a) and (b).  Arson is an enumerated felony in the statute.  Mich. Comp. Laws § 750.316(1)(b).  The trial court did not broaden the charged offense by instructing the jurors that they could find Petitioner guilty of first-degree murder if he caused a fire and prevented people from leaving the premises.

Petitioner contends that a constructive amendment also occurred when the trial court omitted the causation element from the instruction on second-degree murder and did not state that the victims died as a result of smoke inhalation.  As previously explained, the trial court did instruct the jurors that, to find the defendants guilty of second-degree murder, they had to find that the defendants caused the death of a victim.  (Tr. June 9, 1993, at 17-18.)  The trial court was not required to say that the victims died as a result of smoke inhalation.  In conclusion, neither the jury instruction on first-degree murder, nor the instruction on second-degree murder, constituted a variance or constructive amendment.

### H.  The Combined Errors

Petitioner asserts that the cumulative effect of errors, including prosecutorial misconduct, ineffective assistance of counsel, and defective jury instructions, deprived him of a fair trial. This claim has no merit because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Therefore, it cannot be said that the state court's judgment was contrary to any Supreme Court decision so as to warrant habeas relief under 28 U.S.C. § 2254(d). *Id.*

## IV.  Conclusion

The state courts' adjudications of Petitioner's claims did not result in decisions that were contrary to, or an unreasonable applications of, Supreme Court precedent.  Accordingly, the Petition for Writ of Habeas Corpus [Dkt. 1, Feb. 24, 2005] is DENIED.

Petitioner's Motion for Reconsideration of the Court's order denying him appointment of counsel and funds to retain an investigator [Dkt. 37, Nov. 15, 2006] is DENIED, because Petitioner has not shown that the Court made a "palpable defect."  Local Rule 7.1(g)(3) (E.D. Mich. Dec. 1, 2005).  Petitioner's Motion for an Evidentiary Hearing [Dkt. 38, Dec. 21, 2006] is DENIED because the record refutes Petitioner's factual allegations or otherwise precludes habeas relief. *Schriro v. Landrigan*, __ U.S. __, __, 127 S. Ct. 1933, 1940 (2007).

Petitioner's Motion for a Special Hearing on the Merits of the Habeas Petition [Dkt. 39, Feb. 2, 2007] is GRANTED to the extent that the Court adjudicated the merits of Petitioner's claims, as opposed to addressing Respondent's argument that Petitioner did not comply with the Statute of Limitations.  The Court finds it unnecessary to rule on Petitioner's contention that Respondent forfeited his procedural defense by not renewing his motion to dismiss after the

Court re-opened this case. Finally, Petitioner's Motion for Bail Pending a Decision on the

Habeas Petition [Dkt. 42, May 23, 2007] is DENIED as moot.


                                        s/John Corbett O'Meara
                                        United States District Judge


Dated:  September 28, 2007








I hereby certify that a copy of the foregoing document was served upon the parties of record on
this date, September 28, 2007, by electronic and/or ordinary mail.


                                        s/William Barkholz
                                        Case Manager